UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WEST MICHIGAN WOODS LIMITED
DIVIDEND HOUSING ASSOCIATION
LIMITED PARTNERSHIP,

    Plaintiff,

v.    Case No. 1:09-CV-79

CITY OF KALAMAZOO,    HON. GORDON J. QUIST

    Defendant.

_____/

**OPINION**

Plaintiff, West Michigan Woods Limited Dividend Housing Association Limited Partnership ("West Michigan"), has sued the City of Kalamazoo (the "City"), seeking a judgment that its indebtedness to the City under a Promissory Note and a Second Mortgage was extinguished as of October 2008. West Michigan alleges that the Court has jurisdiction over its claim "based upon federal questions involving the interpretation of Federal Regulations issued pursuant to 42 U.S.C. [sic] 14370 relating to a grant by the United States Department of Housing and Urban Development." (Compl. ¶ 3.) West Michigan has filed a Motion for Summary Judgment and requests an order requiring the City to return the Promissory Note marked "paid in full" to West Michigan and provide West Michigan a mortgage discharge suitable for recording. After reviewing the Complaint, as well as West Michigan's motion and the City's response, the Court concludes for the reasons set forth below that it lacks subject matter jurisdiction over West Michigan's claim. Accordingly, the Court will dismiss West Michigan's Complaint without prejudice for lack of subject matter jurisdiction.

BACKGROUND

In 1987, the United States Department of Housing and Urban Development ("HUD") awarded the City a grant for the construction of a 150-unit multi-family rental housing development, with 60 units reserved for low income families for a period of twenty years. The City, in turn, entered into an Owner/Grantee Agreement with West Michigan, a developer, pursuant to which the City agreed to loan the grant funds in the approximate amount of $3.2 million to West Michigan for construction of the development. The balance of the $8 million construction amount was provided by a separate loan from the Michigan State Housing Development Authority. In connection with the Owner/Grantee Agreement, West Michigan executed a Promissory Note in favor of the City in the amount of $3,218,851, and a Second Mortgage on the development securing repayment of the Promissory Note.

The HUD program that provided the grant was authorized under Section 17 of the United States Housing Act of 1937 and the regulations promulgated thereunder, set forth in 24 C.F.R. Part 850. Pursuant to 24 C.F.R. § 850.151(a), "[t]he owner's compliance with its obligations under this section must be secured by a mortgage or other security instrument meeting the requirements of § 850.155." Section 850.155 provides:

> Assistance provided under this part shall constitute a debt of the owner (including its successors in interest) to the grantee, and shall be secured by a mortgage or other security instrument. *The debt shall be repayable in the event of a substantive, uncorrected violation by an owner of the obligations contained in paragraphs (b), (c), (d) and (e) of § 850.151.* The instruments securing this debt shall provide for repayment to the grantee in an amount equal to the total amount of housing development grant assistance outstanding, plus interest which is determined by the Secretary by adding two percent to the average yield on outstanding marketable long-term obligations of the United States during the month preceding the date on which assistance was made available. *The amount to be repaid shall be reduced by 10 percent for each full year in excess of 10 years that intervened between the beginning of the term of the owner-grantee agreement and the violation.*

24 C.F.R. § 850.155 (italics added). West Michigan alleges, and the City does not dispute, that West Michigan did not commit a substantive violation in the twenty-year period following the date of the Owner/Grantee Agreement.

Based upon § 850.155, which by its terms applies only when the owner commits a substantive, uncorrected violation, West Michigan argues that the amount of the debt under the Note has been reduced to zero. It argues that because the amount of the debt to be repaid in the case of a substantive violation is reduced by 10% for each full year after ten years pass from the date of the Owner/Grantee Agreement, the regulation must be read to provide a non-violating owner a 100% reduction of the debt after twenty years, i.e., 10 years x 10% per year, because it would make no sense to forgive the entire loan amount after twenty years for an owner that commits a violation while denying the same reduction or forgiveness to an owner who commits no violation.

## DISCUSSION

"[F]ederal courts are courts of limited jurisdiction with only such jurisdiction as is defined by the Constitution and granted by Congress." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001) (internal quotations and citation omitted). It is thus "presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 51 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994) (internal citation omitted). This burden is not onerous, but merely requires that the plaintiff "show only that the complaint alleges a claim under federal law, and that the claim is 'substantial.'" *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1248 (6th Cir. 1996).

Even if the parties believe that jurisdiction is proper, a federal court must still satisfy itself that it has subject matter jurisdiction. As the Sixth Circuit has observed, "it is beyond question that federal courts have a continuing obligation to inquire into the basis of subject-matter jurisdiction to

3

satisfy themselves that jurisdiction to entertain an action exists." *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998). It is appropriate, therefore, for a court to consider subject matter jurisdiction *sua sponte*. *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("While neither of the parties has questioned this court's jurisdiction to hear this appeal, federal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*.").

West Michigan alleges federal question jurisdiction pursuant to 28 U.S.C. § 1331, which provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The Court must apply the "well-pleaded complaint rule" in determining whether West Michigan's claim "arises under" federal law. *Mich. So. R.R. Co. v. Branch & St. Joseph Counties Rail Users Ass'n, Inc.*, 287 F.3d 568, 573 (6th Cir. 2002). This rule "requires that a federal question be presented on the face of the complaint." *Id.* (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 2429 (1987), and *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 43 (1908)). "[A] case arises under federal law, for purposes of § 1331, when it is apparent from the face of the plaintiff's complaint either that the plaintiff's cause of action was created by federal law, or if the plaintiff's claim is based on state law, a substantial, disputed question of federal law is a necessary element of the state cause of action." *Id.* (citations omitted).

West Michigan does not allege, nor does its Complaint disclose, that federal law creates its cause of action. In other words, West Michigan does not allege that the United States Housing Act of 1937 or the applicable HUD regulations authorize a cause of action. Similarly, the Complaint does not plead a state law claim. Rather, although not specifically citing the statute, the Complaint, including West Michigan's prayer for relief, suggests that West Michigan seeks a judgment pursuant

4

to the Declaratory Judgment Act, 28 U.S.C. § 2201. However, that Act "does not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Southeast Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Rather, the complaint must disclose an independent basis for federal jurisdiction. *Id.* The Complaint in this case does not do so.

Where a plaintiff seeking a declaratory judgment raises federal question jurisdiction, courts, including the Sixth Circuit, generally consider whether the facts alleged in the plaintiff's well-pleaded complaint show that the defendant could file a coercive action arising under federal law. *AmSouth Bank v. Dale*, 386 F.3d 763, 775 (6th Cir. 2004) ("Because the Banks' actions are declaratory judgment actions 'seek[ing] in essence to assert a defense to an impending or threatened state court action, it is the character of the threatened action, and not of the defense, which will determine whether there is federal-question jurisdiction in the District Court.'") (quoting *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248, 73 S. Ct. 236, 242 (1952)); *Columbia Gas Trans. Corp. v. Drain*, 237 F.3d 366, 370 (4th Cir. 2001) (stating that "if the declaratory judgment plaintiff is not alleging an affirmative claim arising under federal law against the declaratory judgment defendant, the proper jurisdictional question is whether the complaint alleges a claim arising under federal law that the declaratory judgment defendant could affirmatively bring against the declaratory judgment plaintiff"); *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 861 (11th Cir. 2008) ("Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.'") (quoting *Household Bank v. JFS Group*, 320 F.3d 1249, 1251 (11th Cir. 2003)).

The question, then, is whether West Michigan has alleged facts in its Complaint showing that the City could bring an affirmative claim against West Michigan arising under federal law. The

answer is no. If West Michigan were to default on the Note, the City could file an action on the Note for breach of contract. It could also file a judicial foreclosure action. Both of those claims would arise under state, not federal, law. In other words, the City would not need to rely on federal law to establish the required elements of its claims. Moreover, even if West Michigan raised 24 C.F.R. § 850.155 as a defense to the City's actions, such defense would not create federal question jurisdiction. *Ammex, Inc. v. Cox*, 351 F.3d 697 (6th Cir. 2003) (stating that "anticipation of a federal defense through a declaratory action . . . generally does not create subject matter jurisdiction under the well-pleaded complaint rule").

Even were the Court to assume that West Michigan is not asserting a claim under the Declaratory Judgment Act, but is really asserting some state law claim – perhaps breach of contract for failing to provide a release of mortgage or failing to return the Note marked "paid in full" – and alleging that "arising under" jurisdiction exists under the "substantial federal question doctrine," the Court would still find a lack of jurisdiction. The substantial federal question doctrine applies "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9, 103 S. Ct. 2841, 2846 (1983). "The mere presence of a federal issue in a state law cause of action, however, does not automatically confer federal question jurisdiction, either originally or on removal." *Mikulski v. Centerior Energy Corp.*, 435 F.3d 666, 675 (6th Cir. 2006). Rather, the federal question raised by a state law claim "must be: 1) substantial; 2) disputed; 3) of great federal interest; and 4) resolution of the federal question must be necessary to the resolution of the state law claim." *Id.* (citing *Long v. Bando Mfg. of Am., Inc.*, 201 F.2d 754, 757-59 (6th Cir. 2000)).

In *Grable & Sons Metal Products v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S. Ct. 2363 (2005), the Supreme Court clarified that *Merrell Dow Pharmaceuticals Inc. v.*

6

*Thompson*, 478 U.S. 804, 106 S. Ct. 3229 (1986), does not require a federal cause of action as a condition for exercising federal question jurisdiction. Rather, the Court said that "*Merrell Dow* should be read in its entirety as treating the absence of a federal private right of action as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' that § 1331 requires." *Grable & Sons*, 545 U.S. at 318, 125 S. Ct. at 2370. The Court provided additional guidance on federal question jurisdiction where federal law does not provide a right of action: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314, 125 S. Ct. at 2368. The plaintiff in *Grable & Sons* filed a quiet title action in Michigan state court alleging that the defendant's title to certain property was invalid. The defendant had purchased the property from the IRS after the IRS seized it to satisfy the plaintiff's federal tax delinquency. As required by a Michigan court rule, the plaintiff alleged that it had superior title than the defendant because the IRS failed to give it proper notice of the seizure as required by 26 U.S.C. § 6335(a). The defendant removed the case to federal court alleging federal question jurisdiction. The district court held that it had jurisdiction and rejected the plaintiff's claim that the statute required personal service. The Sixth Circuit affirmed on both jurisdiction and the merits. In considering the jurisdictional issue, the Supreme Court first determined that the adequacy of notice under the statute presented a substantial federal issue because the meaning of the federal statute was an essential element of the plaintiff's quiet title claim that was actually in dispute. In fact, the Court noted, the meaning of the federal statute "appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 315, 125 S. Ct. at 2368. The Court found the meaning of the federal tax provision an important issue of federal law that belonged in federal court, especially in light of the Government's interest in the "'prompt and certain collection of

7

delinquent taxes,'" and the IRS' need for certainty in notice requirements to provide buyers of seized property assurance that the IRS has taken all steps required to convey good title. *Id.* (quoting *United States v. Rodgers*, 461 U.S. 677, 709, 103 S. Ct. 2132, 2135 (1983)). The Court also concluded that the exercise of federal jurisdiction would not upset the division of labor between state and federal courts, noting that "it will be the rare state title case that raises a contested matter of federal law [and] federal jurisdiction to resolve genuine disagreement over federal tax title provisions will portend only a microscopic effect on the federal-state division of labor." *Id.*

Unlike *Grable & Sons*, this case does not present a substantial federal issue. Proper notice under the federal statute was the sole contested issue in *Grable & Sons*, and if *Grable & Sons* prevailed, the federal government would have been required to reimburse the buyer of the parcel at issue. In this case, while West Michigan asserts that the balance of the Promissory Note has been reduced to zero under 24 C.F.R. § 850.155, its Complaint, as well as the parties' summary judgment briefs, shows that the meaning of the regulation is not the sole contested issue, nor is it even a substantial issue. Rather, the terms of the Promissory Note and the Second Mortgage are paramount, because they define West Michigan's obligation to repay the amount due under the Promissory Note. In point of fact, West Michigan refers to paragraph 13(d) of the Second Mortgage in its Complaint as support for its claim that its obligation is reduced to zero.[1] (Compl. ¶¶ 9, 11.) Moreover, West Michigan attached to its Complaint the Owner/Grantee Agreement, the Promissory Note, and the

---

[1] The Court notes that while the parties have cited paragraphs 13(c) and (d) as containing language pertaining to a 10% annual reduction upon default, neither paragraph of the Second Mortgage attached to the Complaint says anything about a 10% annual reduction in connection with a violation by the owner. (Docket No. 1-4.) While Section 13 does cover "Events of Default," paragraph 13(c) states that the Mortgagee (the City) may "[c]ause to be brought down to date an abstract or abstracts and tax histories of the Mortgage Premises, procure title insurance or title reports or, if necessary, procure new abstracts and tax histories," and paragraph 13(d) states that the Mortgagee may "[o]btain a receiver to manage the Mortgage Premises and collect the rents, profits and income therefrom." In fact, the Court could find no language anywhere in the Second Mortgage referring to such reduction.

8

Second Mortgage. Notably, the Owner/Grantee Agreement states in Section 4.7(A) that it "shall be interpreted in accordance with and governed by the laws of the State where the Project is located," and the Promissory Note and the Second Mortgage both specify that Michigan law shall apply to any disputes arising under those instruments. Thus, state, not federal law, will control the outcome of the dispute.

The disputed federal issue – the meaning or application of the HUD regulation – is also not a substantial federal question in the sense that it does not involve a federal agency, such as the IRS in *Grable & Sons*. Rather, the dispute is between a Michigan municipality and a private developer. In *Grable & Sons*, the Court emphasized the important federal interests in the interpretation of federal tax laws and collection of delinquent federal taxes. There is no similar concern in this case, which addresses only whether West Michigan must repay the sum due under the Promissory Note to the City, not the federal government. Furthermore, Congress did not provide a private right of action for violation of the federal regulation at issue. The absence of a private right of action suggests that Congress did not intend for federal courts to exercise jurisdiction. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 552 (6th Cir. 2006) (citing *Grable & Sons*, 545 U.S. at 318, 125 S. Ct. at 2370). For this reason, it is not clear to this Court that it could entertain West Michigan's claim "without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons*, 545 U.S. at 314, 125 S. Ct. at 2368.

Other courts addressing similar circumstances have concluded that the presence of HUD regulations as part of a state law claim was insufficient to invoke federal question jurisdiction. In *North Jefferson Square Associates, L.P. v. Virginia Housing Development Authority*, 94 F. Supp. 2d 709 (E.D. Va. 2000), the plaintiff, which provided subsidized housing to low and moderate income residents pursuant to an agreement with the defendant public housing authority and Section

8 of the United States Housing Act of 1937, filed suit in state court to recover money it claimed was due from the housing authority, and reduce the interest rate on its mortgage. The plaintiff alleged state law claims breach of contract. The housing authority removed the case to federal court, alleging that certain HUD regulations required interpretation to resolve the plaintiff's claims. The court concluded that the presence of such regulations did not establish a substantial federal question, reasoning:

> The presence of parallel language between 24 C.F.R. § 883.308(d) and the Housing Assistance Payment Contract at paragraph 2.7(g)(2) is significant, but not determinative. The federal regulations noted by the Authority are of a persuasive nature in this case. In the final analysis, traditional principles of contract interpretation will decide the claims Plaintiff has made.

*Id.* at 719. The *North Jefferson Square Associates* court found persuasive a similar case from the Southern District of Florida, *Kunkler v. Fort Lauderdale Housing Authority*, 764 F. Supp. 171 (S.D. Fla. 1991), in which a landlord sued HUD and a housing authority after the termination of its Section 8 rental subsidies. The *Kunkler* court concluded that "[t]he mere fact that plaintiff was a participant in a program created by the federal government, or that HUD regulations apply to the contracts at issue does not require the pivotal interpretation of federal law necessary to confer jurisdiction." *Kunkler*, 764 F. Supp. at 174. *See also Myers v. Countryside Home Loans*, 368 F. Supp. 2d 587, 588-89 (N.D. Tex. 2005) (holding that the plaintiff's claim of wrongful foreclosure in violation of HUD regulations did not give rise to federal jurisdiction because it was the parties' contract – a deed of trust – that gave rise to the claim and the allegation that the foreclosure violated HUD regulations). For similar reasons, West Michigan's claim does not give rise to federal question jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court will dismiss West Michigan's Complaint without prejudice.

An Order consistent with this Opinion will be entered.


Dated: August 3, 2009                                                              /s/ Gordon J. Quist
                                                                                         GORDON J. QUIST
                                                                                 UNITED STATES DISTRICT JUDGE